R. C. BADGER and wife v. W. A. DANIEL and others.

*Notice--Purchaser Pendente Lite--Pleading--Description of Property--Motion.*

1. The rule that the pendency of an action affects a purchaser *pendente lite* of the property in controversy, with notice, in the same manner as if he had actual notice, and renders him bound by the judgment or decree in the suit, is confined to property *directly in litigation.*

2. In such case, the property must be so described in the pleadings as to give a purchaser notice that the property which he buys is that in litigation.

3. Where facts necessary to the support of a motion in the cause are not shown, they must be assumed not to exist.

(*Isler* v. *Brown*, 66 N. C. 556, cited and approved.)

MOTION in the Cause heard at Spring Term, 1877, at HALIFAX Superior Court, before *Buxton, J.*

The plaintiffs moved the Court for an order restraining the defendants from making any disposition of certain bonds until the determination of the action then pending and final judgment therein. The case is sufficiently stated by Mr. Justice RODMAN in delivering the opinion of this Court. His Honor allowed the motion and the defendant, Winfield, appealed.

*Messrs. W. N. H. Smith, Mullen & Moore* and *Walter Clark,* for plaintiffs.
*Messrs. W. H. Day* and *Moore & Gatling,* for defendant.

RODMAN, J. The case is briefly this: The plaintiffs are creditors of Andrew Joyner, who died in 1856, having devised a lot in Halifax to Mary Daniel, upon whose death it descended to the two defendants, J. J. Daniel and W. A. Daniel. A decree was made in the Court of Equity that

said lot be sold for partition, and under the decree the lot was sold on the 6th of November, 1871, by Gregory, Clerk of the Superior Court, and purchased by Conigland who paid a part of the price in cash, and gave two notes of $315 each payable to Gregory, as Clerk, for the residue. On the 15th of August, 1876, Gregory, the Clerk, by order of the Judge of Halifax Superior Court, assigned and delivered said bonds to said J. J. Daniel, he being also the administrator and sole next of kin of W. A. Daniel, who had died since the sale.

In the summer of 1876, J. J. Daniel applied to one Winfield for an advance in money and goods, and promised to assign the bonds to Winfield as a collateral security. Winfield made the advance but did not then receive an assignment of the bonds or take possession of them. Some time afterwards J. J. Daniel, without the knowledge of Winfield, deposited the bonds with Battle, Bunn & Co. to secure a debt due to them. Battle, Bunn & Co. afterwards assigned their debt and the bonds to Winfield for value.

At Fall Term, 1871, of Halifax Superior Court, the plaintiffs brought an action on the bond of W. A. Daniel, who had been guardian of the *feme* plaintiff, to which said Joyner was a surety (and the only solvent surety) and they sought to subject the property of said Joyner to their recovery. We assume that the personal representative of Joyner is a party to this action which is still pending.

At the time Winfield made the advance to J. J. Daniel on his promise to assign the bonds as aforesaid, Winfield had no actual notice of the pendency of the above mentioned suit. Neither had Battle, Bunn & Co. any such notice when they received the bonds as collateral security for the debt to them as aforesaid. Winfield did however have actual notice of the suit when he purchased the debt of J. J. Daniel to Battle, Bunn & Co., and took their assignment of the bonds to himself. On these facts at Spring Term, 1877, the plaintiffs moved the Court for an order requiring J. J. Daniel and

Winfield to deposit said bonds in Court, and enjoining them, from collecting or disposing of them. The Judge ordered accordingly and from that order Winfield appealed to this Court.

The plaintiffs admit that inasmuch as the sale of the lot was made more than two years after the death of Joyner, the purchaser acquired a good title. Bat. Rev. ch. 45, § 156.

They contend however that they can follow the property of Joyner which the notes stand in the place of, and therefore the notes, in the hands of persons claiming as volunteers under him; and that the pendency of their action against the representative of Joyner for the purpose stated, was notice to all the world that the title to the two notes of Conigland was in controversy, and that although Winfield and Battle, Bunn & Co. had no actual notice of the pending action when they acquired interests in the notes, it must be conclusively presumed that they had notice of it, and that therefore the notes in the hands of Winfield are subject to the plaintiffs' recovery against the personal representative of Joyner.

It is held on grounds of public policy that "a purchase made of property actually in litigation, *pendente lite*, for a valuable consideration and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice, and he will accordingly be bound by the judgment or decree in the suit" 1 Story Eq. Jur., § 405.

The reason of the rule is given by Story in the succeeding section, and when confined within proper limits it is evidently a necessary one, although even then it may occasionally work a hardship, although rarely if ever without some degree of negligence in the purchaser. It is certainly confined to property directly in litigation, and the property must be so described in the pleadings as to give a purchaser notice that the property which he buys is that in litigation.

The reason of the rule does not require it to be more extensive than this, and without this limitation, cases of hardship must be frequent. *Worsley* v. *Earl of Scarboro*, 3 Atk. 392 ; *Isler* v. *Brown*, 66 N. C. 556 ; *Lewis* v. *Mew*, 1 Stobhart Eq. 180 , *Price* v. *White*, 1 Bailey Eq. 244; *Le Neve* v. *Le Neve*, 2 White & Tudor's L. C. E., Am. Notes, 121.

We have not before us the pleadings in the original action in which the motion under consideration was made. All that we know of them is from the statement in the case agreed, that it was an action on the guardian bond of Daniel, to which Joyner was a surety, and sought to subject the real and personal property of Joyner to the payment of the recovery. It does not appear from this that the lot was particularized or described in any manner, or that it was the property of Joyner, or had come to J. J. Daniel and W. A. Daniel from him. It is not probable that the title to the lot was directly in litigation. As a party moving must show facts to support his motion, when any facts necessary for that purpose are not shown, they must be assumed not to exist. The extent of constructive notice which may be imputed to a purchaser from the pendency of a suit, cannot exceed what he would have obtained by a perusal of the pleadings; and if Winfield had perused the pleadings in the pending action with the notes in question before him, he would not have known that the lot for which the notes professed to have been given, and which is described in them, had ever been the property of Joyner, or was in any manner, still less directly, in litigation in that action.

Other considerations occur, but these views dispose of the question. We think Winfield acquired a title to the notes as against the plaintiffs,

PER CURIAM.            Judgment reversed.